# THE MAYOR AND CITY COUNCIL OF BALTIMORE *vs.* GEORGE H. SCHAFER.

*Taxation of Landed Property in the Territory Annexed to Baltimore City.*

A lot of ground in the territory annexed to Baltimore City under the Act of 1888, ch. 98, situated in a triangular area bounded by three streets or avenues only partly paved and curbed, the said area containing one million superficial square feet and having upon it forty-seven buildings, is not subject to the full city rate of taxation, since the Act of 1902, ch. 130, provides that landed property in said annexed territory shall not be liable to the city tax rate until formed into blocks of ground not exceeding 200,000 superficial square feet, bounded on all sides by intersecting streets graded and paved from curb to curb, and until there shall be upon every such block of ground at least six houses.

*Decided November 21st, 1907.*

Appeal from the Circuit Court of Baltimore City (EL-LIOTT, J.)

The plat referred to in the opinion of the Court is as follows:

Opinion of the Court.

Defendant's Exhibit No. 1.

The cause was argued before Boyd, Pearce, Schmucker, Burke and Rogers, JJ.

*Edgar Allan Poe, Deputy City Solicitor* (with whom was *W. Cabell Bruce, City Solicitor*, on the brief), for the appellant.

*James J. McNamara*, for the appellee.

Boyd, C. J., delivered the opinion of the Court.

The appellee is owner of a leasehold property situated within the limits of the territory annexed to the city of Baltimore, under and by virtue of the Act of 1888, ch. 98, and filed the bill in this case to enjoin the appellant from levying and collecting taxes on said property in excess of sixty cents on each one hundred dollars. The bill also prays that the levy of one dollar and ninety-seven and a half cents for city purposes (being the city rate for 1907) be decreed *ultra vires* and void, and that the levy and all proceedings thereunder be enjoined. The Act of 1888 and that of 1902, ch. 130, known as the "Foutz Act," have been before us in a number of cases, but the question now presented is whether the Act of 1902 applied to property in the Annex, which was in the condition that that of the appellee was in 1900, and since then. The appellee's property is on a triangular area of ground bounded on the north by the old Frederick road, on the south by Frederick avenue, on the west by Loudon avenue and on the east by the intersection of the old Frederick road and Frederick avenue. The area thus bounded contains one million superficial square feet. It fronts on the old Frederick road 3,034 feet, on Frederick avenue 2,754 feet and on Loudon avenue 911 feet. Two or three hundred feet of the Old Frederick road are curbed and macadamized—the rest having one inch of stone thereon, but not curbed—500 feet of Frederick avenue are curbed and paved in the middle, but not from curb to curb, and Loudon avenue is not graded, curbed or paved. The mud on it is from six to twenty-four inches deep, as described by a witness in the case. There are about forty-

seven dwellings and storehouses on the block—the parts most built upon being near the appellee's property, which is 500 feet from the intersection of the Old Frederick road and Frederick avenue. The latter is a private toll road. We will request the Reporter to publish with this opinion a copy of the plat filed which will explain the location of the roads, houses, etc. There are a few brick houses, but most of them are frame. The streets are described as practically in the same condition they were in 1896, excepting Loudon avenue, which is worse than it was then. This block is said to be in better condition than any in that locality. They have city water, city lights and police protection and the lots vary from thirteen to fifty feet, in frontage—the majority being twenty feet.

It was provided by sec. 19 of the Annexation Act (1888) that until the year 1900, the rate of taxation upon all "landed property," and upon personal property liable to taxation in the territory annexed, should not exceed the tax rate of Baltimore County for 1887, which was sixty cents on the one hundred dollars, and that section concluded as follows: "From and after the year nineteen hundred, the property, real and personal, in the said territory so annexed shall be liable to taxation and assessment in the same manner and form as similar property within the other wards of said city may be liable; *provided*, however, that after the year nineteen hundred, the Baltimore County rate of taxation for the year eighteen hundred and eighty-seven shall not be increased for city purposes on any landed property within the said territory until avenues, streets or alleys shall have been opened and constructed through the same, nor until there shall be upon every block of ground so to be formed, at least six (6) dwellings or storehouses ready for occupation." After our decision in *Sindall* v. *Baltimore*, 93 Md. 526, the Act of 1902 was passed—manifestly because the Legislature thought it just to give further relief, by reason of the conditions still existing in some of the annexed territory in 1900, and the construction placed upon the Act of 1888 by this Court in Sindall's case. This Act of 1902 declared what certain terms used in sec. 19 of the Act

of 1888 (now sec. 4 of Art. 4 of the Code of Public Local Laws) should mean. For convenience we will divide them into paragraphs and number them. They are:

(1) "'Landed property' shall be construed to mean real estate, whether in fee simple or leasehold, and whether improved or improved."

(2) That the expression used as to avenues, etc., "shall be construed to mean until avenues, streets or alleys shall have been opened, graded, kerbed and otherwise improved from kerb to kerb by pavement, macadam, gravel or other substantial material."

(3) That " 'block of ground' shall be construed to mean an area of ground not exceeding two hundred thousand superficial square feet, formed and bounded on all sides by intersecting avenues, streets or alleys opened, graded, kerbed and otherwise improved from kerb to kerb by pavement, macadam, gravel or other substantial material as above provided."

The validity of that Act was assailed by the city, but in *Joesting* v. *Balto. City*, 97 Md. 589, it was sustained. The late Chief Judge of this Court, in delivering the opinion, said: "The effect of the Act of 1902 is to retain the sixty-cent rate in the belt until the landed property there situated becomes urban property, within the meaning of the terms employed in that Act." There was a proviso that nothing in the Act should be construed to affect the tax levied for the year 1902. That was doubtless made because there was "landed property" which was liable to the full city rate under our decision in Sindall's case, which would not be so liable under the Act of 1902, and hence the Legislature in giving the additional relief was careful not to disturb the taxes for 1902, which were already levied. The conditions under which the full city tax rate could be imposed, under the decision in Sindall's case, were said by JUDGE McSHERRY to be: "First, when the 'landed property' has been divided into lots and compactly built on with a view to fronting on a street not yet constructed but contemplated by the persons who project it or build with reference to it, though the municipality has not opened such

street or accepted a dedication of it.    Secondly, when though still 'landed property,' that is rural property, in the sense that it has not been divided into lots and has not been compactly built on, it is intersected by opened and constructed streets— opened and constructed by or in conformity with municipal authority—which streets form blocks and upon which blocks there are at least six houses.    In the second instance though the residue of the block be unimproved or be not laid out in lots the whole block will be liable to be taxed at the current city rate, as soon as six houses are erected on it."    There were therefore very material changes made in the law as announced in Sindall's case, by the Act of 1902. ·

Is then the property involved in this case "urban property, within the meaning of the terms employed in that Act?" Under the definition of "landed property" it matters not whether it is "improved or unimproved," but it is clear that these avenues and streets have not been "opened, graded, kerbed and otherwise improved from kerb to kerb by pavement, macadam, gravel or other substantial material," and this "block of ground" is not "an area of ground not exceeding two hundred thousand superficial square feet, formed and bounded on all sides by intersecting avenues, streets or alleys, opened, graded, kerbed and otherwise improved from kerb to kerb," as required.    For if they are conceded to be opened and graded within the meaning of that Act, the streets are not kerbed or paved and the block of ground contains over a million superficial square feet.    It is therefore manifest that this is not "urban property, within the meaning of the terms employed in that Act;" and hence under the decision in *Joesting's case, supra,* the sixty-cent rate is still applicable to it.

It is easy to see why such provisions were made by the Act of 1902.    It was intended to exempt the property in the annexed territory from the full city rate, until the conditions were similar in important respects to those within the old city limits.    Take this case as an illustration.    There is no cross street in the block, which is over a half mile long, one street is merely a toll road and another is described to be in a con-

dition that would not long be tolerated on a country road, in a county which gives proper attention to its highways. It is true that the residents have city water, although they doubt-less pay for it, and they have lights and fire protection, but that is not all they are entitled to under the requirements of this Act before they can be made to pay the city rates of tax-ation. The city can open new streets so as to comply with the requirements of the Act as to the area, and when it does that, and improves those by which the blocks are formed and bounded as required by the Act, it can impose the regular rates of taxation, but if its contention in this case be adopted it would, as suggested in one of the briefs filed, work great injustice and possibly cause serious legal difficulties in the collection of taxes. If, for example, this block must be held to be excepted from the provisions of the Act of 1902, be-cause the improvements were erected before that Act was passed, and thereby made liable to the full city rate, and an-other block in the immediate neighborhood was similarly im-proved after 1902, and therefore only liable to the sixty-cent rate, it would not only be unjust to the owners of property in this block, but such discrimination would to say the least, be of very doubtful validity: It is true that it is difficult to so legislate on such questions as are involved in the Acts of 1888 and 1902 as to do equal justice to all, but we do not find anything in the Act of 1902 which would justify us in holding that the Legislature meant to deprive property in such condi-tion as this is from the benefits of its provisions.

In the case of *Hiss* v. *Baltimore*, 103 Md. 620, so much relied on by the appellant, the conditions were altogether dif-ferent. The block then before the Court only contained one hundred and twenty thousand superficial square feet, and the streets and avenues were paved and otherwise improved, like other city property. This Court said: "It is clear, we think from the facts of this case, that the property in question is not landed property, within the meaning of either the 'Foutz Act,' or the proviso in sec. 19 of the Annexation Act of 1888. It is improved city property, similar to other property within the

old city limits and by the express terms of the Act, 'from and after the year 1900, the property real and personal, in the territory annexed, shall be liable to taxation and assessment, in the same manner and form as similar property within the present limits of the city may be liable.' "   And again, "We fully agree with the contention of the appellee as stated in its brief, that this latter Act was passed to prevent property which was in no sense city property from being subject to the full city tax rate until certain things were done by the city.   It certainly was never intended to affect property which at the time of its passage was not only not landed property but not even suburban property, but in the fullest sense of the term city property, bounded by the streets, and enjoying every advantage and facility that attaches to similar property, within the old city limits."   When the "Foutz Act" was passed the block of ground before the Court in the Hiss case was already of the size therein prescribed, and was bounded by intersecting avenues and streets, which in every particular complied with the requirements of that Act.   As the avenues and streets were then opened, graded, kerbed and otherwise improved from kerb to kerb, and the block was of the size contemplated by that Act, it could not have been intended that the Act of 1902 should apply to such a block, because the law provided that the county rate shall not be increased *until* the avenues, etc., *shall have been* opened, etc., nor *until* there shall be upon every block of ground *so to be formed* at least six dwellings or storehouses.   Manifestly those provisions in the Act of 1888 had reference to property through which avenues and streets were to be *afterwards* opened and constructed, and the provision as to six houses applied to a block *so to be* formed.   And when the Act of 1902 explained what was meant by the terms therein mentioned, it could not have been intended to apply to property which had *already* been laid out in the manner that Act contemplated.   But in this case neither the streets nor the block were in the condition that the Act requires they shall be in before the properties shall be liable to the full city rate, and hence the Act is applicable, and the full city tax rate cannot be collected.

*Decree affirmed, the appellant to pay the costs.*