# THE MAYOR AND CITY COUNCIL OF BALTIMORE *et al. vs.* FRANK L. KNELL *et al.*

### *Taxation of Landed Property in the Territory Annexed to Baltimore City.*

Under the provisions of the Act of 1908, Ch. 286, relating to the classification of landed property in the territory annexed to Baltimore City under the Act of 1888, Ch. 98, into the three classes of urban, suburban and rural real estate, and its assessment for taxation in accordance therewith, lots of ground situated in a block or area exceeding 200,000 superficial square feet, bounded on all sides by streets graded, and paved from kerb to kerb, are to be classified as suburban property, and are liable to taxation as such, provided the lots do not exceed 200 feet in depth, and provided also that the property was not liable to taxation as urban real estate at the time of the passage of the Act of 1908.

Lots of ground situated in such a block which exceed 200 feet in depth are to be classified as rural real estate.

Land situated in a block of ground in the annexed territory, one of whose boundaries is an unpaved lane, was not subject to taxation at the city rate under the Act of 1902, Ch. 130.

Private alleys, although paved by the abutting owners, are not to be regarded as boundaries under the Act of 1908, Ch. 286, so as thereby to convert sections of the entire area into blocks of ground containing less than 200,000 square feet.

Under the Act of 1908, Ch. 286, property in the annexed territory cannot be classified as suburban real estate unless it fronts on highways other than turnpikes upon which tolls are charged. *Held,* that when the highway upon which a lot fronts is a turnpike road upon which no tolls are charged in going to or from the lot to any part of the former city limits, such turnpike is to be considered a public street, although tolls are charged upon other portions of it.

*Decided November 17th, 1909.*

Appeal from the Baltimore City Court (HARLAN, C. J.).

The prayers referred to in the opinion of the Court are as follows:

*Appellants' 1st Prayer.*—The appellants pray the Court to rule as a matter of law: That the block of ground bounded on the northeast by Pennsylvania avenue, on the east by Butchers' lane, on the south by North avenue, on the west by Fulton avenue and on the northwest by Clifton street, is not a "block of ground not exceeding 200,000 superficial square feet, formed and bounded on all sides by intersecting streets, avenues or alleys, opened, graded, curbed and otherwise improved from curb to curb by pavement, macadam, gravel or other substantial material," as defined by the Act of 1908, Chapter 286, and that therefore the real and leasehold property located within the said block of ground is not subject to the same rate of city taxation as real and leasehold property situated within the old limits of the City of Baltimore. (*Refused as unnecessary.*)

*Appellants' 2nd Prayer.*—The appellants pray the Court to rule as a matter of law: That the real and leasehold property fronting on Clifton street, in the said block, should be classified as suburban property under the Act of 1908, Chapter 286, and is subject for the purposes of city taxation to a rate not exceeding one dollar and thirty cents ($1.30) on the hundred dollars ($100.00) of the assessed value of such suburban property. (*Granted.*)

*Appellants' 3rd Prayer.*—The appellants pray the Court to rule as a matter of law: That the real and leasehold property fronting on Fulton avenue, in the said block, should be classified as suburban property under the Act of 1908, Chapter 286, and is subject for the purposes of city taxation, to a rate not exceeding one dollar and thirty cents ($1.30) on the hundred dollars ($100.00) of the assessed value of such suburban property. (*Granted.*)

*Appellants' 4th Prayer.*—The appellants pray the Court to rule as a matter of law: That the real and leasehold property

fronting on North avenue, in said block, should be classified as suburban property under the Act of 1908, Chapter 286, and is subject for the purposes of city taxation, to a rate not exceeding one dollar and thirty cents ($1.30) on the hundred dollars ($100.00) of the assessed value of such suburban property. (*Granted.*)

*Appellants' 5th Prayer.*—The appellants pray the Court to rule as a matter of law: That the real and leasehold property fronting on Pennsylvania avenue in said block, to a depth not exceeding two hundred feet, should be classified as suburban property under the Act of 1908, Chapter 286, and is subject for the purposes of city taxation to a rate not exceeding one dollar and thirty cents ($1.30) on the hundred dollars ($100.00) of the assessed value of such suburban property; and all of said property so fronting on Pennsylvania avenue in excess of said depth of two hundred feet, should be classified as rural property, and is subject, for the purposes of city taxation to a rate equal to one-third of the rate to which urban or city property may be liable, provided however, that the said rate shall not be less than sixty-five cents on the hundred dollars ($100.00) of the assessed value of such property. (*Granted.*)

*Appellants' 6th Prayer.*—The appellants pray the Court to rule as a matter of law: That the real and leasehold property fronting on Pennsylvania avenue in said block, should be classified as rural property under the Act of 1908, Chapter 286; the said Pennsylvania avenue being a turn-pike upon which tolls are charged within the limits of Baltimore City, and said property is subject for the purposes of city taxation to a rate equal to one-third of the rate to which urban or city property may be liable, provided however, that such rate shall not be less than sixty-five cents on the hundred dollars ($100.00) of the assessed value of such property. (*Refused.*)

*Defendant's 1st Prayer.*—The Mayor and City Council of Baltimore prays the Court to rule as a matter of law: That whereas it appears from the agreed statement of facts filed in this cause:

That the property, which is the subject of this appeal, is located in a block, or an area, of ground which is bounded by streets, and laid off into building lots compactly built upon with rows of dwellings; that it is suurrounded by other blocks, or areas, of similar character; that it has the benefit of the city water supply, fire and police protection, and the city street cleaning department; that the streets surrounding the said block, or area, are lighted at the expense of the city, and that said property enjoys every municipal or public service incidental to similar property within the old city limits; that the said block, or area, within which said property is located, is similar to property within the old city limits, and that all of said conditions and advantages existed and were enjoyed prior to the year 1902; therefore said property was not landed property at the time of the passage of the Foutz Act (Act of 1902, Ch. 130), and was not landed property within the proviso contained in the Annex Act (Acts of 1888, Ch. 98), as amended by the Foutz Act, but was urban or city property, and was rightfully and legally classified as such, and subjected to full city rate of taxation for the year 1909, by the Appeal Tax Court pursuant to the provisions of the Act of 1908, Ch. 286. (*Refused.*)

*Defendant's 2nd Prayer.*—The Mayor and City Council of Baltimore prays the Court to rule, as a matter of law: That whereas it appears from the agreed statement of facts filed in this cause:

That the property, which is the subject of this appeal, is located in a block, or area, of ground which is bounded by streets, and laid off into building lots, compactly built upon with rows of dwellings, which is surrounded by other blocks, or areas, of a similar character; that said block has the benefit of the city water supply, fire and police protection, and the City Street Cleaning Department; that the streets surrounding said block are lighted at the expense of the city, and that said property enjoys every municipal or public service incidental to similar property within the old city limits; that the said block, or area, within which said property, is

located, is similar to property within the old city limits, and that all of said conditions and advantages existed and were enjoyed on or before April 13, 1908, therefore said property was not, on said date, landed property within the proviso contained in the Annex Act (Acts of 1888, Ch. 98), as amended by the Foutz Act (Act of 1902, Ch. 130), but was urban or city property, and as such was liable to be taxed at the full city rate on April 12, 1908, the date of the passage of the Act of 1908, Ch. 286; and said property was, therefore, rightfully classified as urban property and subjected to the full city rate of taxation for the year 1909, by the Appeal Tax Court pursuant to the provisions of the said Act of 1908, Ch. 286. (*Refused.*)

*Defendant's 3rd Prayer.*—The Mayor and City Council of Baltimore prays the Court to rule, as a matter of law:

That it was the duty of the Appeal Tax Court, in classifying all the real and leasehold property in the Annex for 1909 taxation, pursuant to the Act of 1908, Ch. 165, to classify as urban property all property which was, on April 13, 1908, the date of the passage of said Act, liable to full city taxation according to the law as it existed at the time of the passage of said Act; and, if the property involved in this appeal was subject to be taxed at the full city rate on April 13, 1908, without regard to the provisions of the said Act of 1908, Ch. 165, then it was properly classified as urban property pursuant to the provisions of said Act. (*Granted.*)

*Defendant's 4th Prayer.*—The Mayor and City Council of Baltimore prays the Court to rule as a matter of law that irrespective of the liability of all the real estate contained in the block bounded by Clifton street, Pennsylvania avenue, Butcher lane, North avenue, and Fulton avenue, to full city taxation for the year 1909, it appears from the agreed statement of facts that the lots and improvements numbered from 2001 to 2045 (inclusive) Fulton avenue, are in a block bounded by Fulton avenue and Clifton street and two alleys, that Fulton avenue and Clifton street have been opened, graded, kerbed and paved from kerb to kerb, and that the

said two alleys have been paved throughout their entire width, and therefore the said lots and improvements are legally classified as urban property by the Appeal Tax Court for 1909 taxation.   (*Refused.*)

*Defendant's 5th Prayer.*—The Mayor and City Council of Baltimore prays the Court to rule as a matter of law, that irrespective of the liability of all the real estate contained in the block bounded by Clifton street, Pennsylvania avenue, Butcher lane, North avenue and Fulton avenue, to full city taxation for 1909, it appears from the agreed statement of facts that the lots and improvements numbered from 1611 to 1617 (inclusive) Clifton street, are in a block bounded by Clifton street and three alleys, that Clifton street has been opened, graded, kerbed and paved from kerb to kerb, and that the said three alleys have been paved throughout their entire width, and therefore the said lots and improvements are legally classified as urban property by the Appeal Tax Court for 1909 taxation.   (*Refused.*)

The diagram referred to in the opinion of the Court is as follows:

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and THOMAS, JJ.

*W. H. DeC. Wright* (with whom was *Edgar Allan Poe* on the brief), for the Mayor and City Council of Baltimore.

*Jacob M. Moses,* for Frank L. Knell *et al.*

BURKE, J., delivered the opinion of the Court.

The record before us contains forty-nine appeals and thirteen cross-appeals taken from an order of the Circuit Court of Baltimore City by which certain property specified in the order was classified and assessed for taxation for city purposes for the year 1909. The forty-nine appeals were taken by the city, and the cross-appeals by certain of the property owners.

The Act of 1908, Chapter 167, gives a right of appeal to the Baltimore City Court to any person who may claim to be aggrieved because of any assessment, or classification made by the Appeal Tax Court. All such appeals must be taken within thirty days after the assessment or classification complained of has been made, and the Act prescribes the method by which the appeal shall be taken. A like appeal is given to the city. The Act confers upon the Court the power to assess anew, or to classify anew the property forming the subject of the appeal; and provides that in the absence of any affirmative evidence to the contrary the assessment or classification appealed from shall be affirmed. The Court is authorized to consolidate any such appeals, or to hear and decide them separately. An appeal is allowed to this Court within ten days after the rendition of the judgment of the Baltimore City Court.

On the 31st of October, 1908, Frank L. Knell filed a petition and appeal under the Act mentioned alleging that the tax imposed upon his property for the year 1909, in the annexed portion of Baltimore City, was illegal for the following reasons first, because the block of ground in which said prop-

erty is located is not surrounded by avenues, streets and alleys, opened, graded, kerbed, and otherwise improved from kerb to kerb by pavement, macadam, gravel or other substatial materials; second, because the block of ground in which said property is located contains more than two hundred thousand superficial square feet of ground; and third because the assessment and classification of the property is contrary to law.

Similar appeals, which had been taken by all of the other property owners whose names appear in the record, were consolidated with the appeal of Frank L. Knell, and all the appeals were submitted for determination without the intervention of a jury. JUDGE HARLAN, to whom the cases were submitted, by agreement of the parties visited and inspected the area or block of ground in which the properties are located, and having considered the questions of law and fact arising in the consolidated cases, decided that the classification of the properties involved in the appeal as urban properties, and as such liable to the full rate of city taxation made by the Appeal Tax Court was erroneous, and such classifications were set aside. Then proceeding under the authority conferred by the Acts of 1908, Chapter 167, and 1908, Chapter 286, the Court classified and assessed the properties as follows:

Nos. 1901, 1903, 1909, 1911, 1917, 1919, 1925, 1927, 1931, 1935, 1937, 2001, 2003, 2005, 2009, 2033, 2035, 2037, 2039, 2041 and 2043 N. Fulton avenue, 1642, 1644, 1646, 1648, 1650, 1654, 1658, 1660, 1662, 1708, 1710, 1712, 1716, 1718, 1722, 1732, 1734, 1736, 1738 and 1744 W. North avenue, 1611 Clifton avenue, and 2674, 2676 and 2678 Pennsylvania avenue are hereby classified as suburban real estate and subject to taxation for city purposes at one dollar and thirty cents ($1.30) on the one hundred dollars ($100.00) of the assessed value thereof.

And further that Nos. 2608, 2614, 2620, 2626, 2638, 2644, 2648, 2652, 2656, 2662 and 2668 Pennsylvania avenue to a depth not exceeding two hundred feet (200') are

hereby classified as suburban real estate, and subject to taxation for city purposes at one dollar and thirty cents ($1.30) on the one hundred dollars ($100.00) of the assessed value thereof, and so far as the same or any of them shall exceed a depth of two hundred feet (200′) such portions of said lots or any of them as are in excess of two hundred feet (200′) depth are hereby classified as rural real estate, and subject to taxation for city purposes at sixty-five cents ($.65) on the hundred dollars ($100.00) of the assessed value thereof. It is from this order that the appeals in these cases were taken.

A diagram of the block which is the subject of controversy is here inserted, which shows its situation and the locations and extent of the several properties specified in the Court's order. The appeal of the city is from the whole order, while the cross-appeals are to so much only of the order as affect the properties fronting on Pennsylvania avenue.

The contention of the city is two-fold: first, that all of the property in the area shown on the plat should be classified as urban property, and taxed at the full city rates; and secondly, that even if this view be not correct, yet the property numbered 1611 to 1617 Clifton street and 2001 to 2045 Fulton avenue should be taxed at the full city rate.

The property owners in the cross-appeals maintain that the property abutting on Pennsylvania avenue should be classified as rural property, because they argue that it fronts on a private way upon which tolls are charged within the city limits. It is thus apparent that the decission of the case involves the construction of the *Act of 1908, Chapter 286,* relating to the classification, assessment, and taxation of property in the territory annexed to Baltimore City by the *Act of 1888, Chapter 98.*

The Act of 1908 was approved on April 13th of that year, and took effect from the date of its passage, and in order to determine whether the property involved in these appeals is subject to the full city rate for the year 1909 it is necessary to know the exact condition of the block at the time the Act became operative.

The area, or block of ground, within which the lots and houses which have been assessed, is located in that part of the city known as the annex, and as appears by the above diagram, is bounded on the northeast by Pennsylvania avenue, on the east by Butcher's lane, on the south by North avenue, on the west by Fulton avenue, and on the northwest by Clifton street. This area contains *four hundred and twelve thousand two hundred and eighty-two superficial square feet.*

Since the passage of the *Act of 1902, Chapter 130,* known as the *Foutz Act,* the property located in this block has been taxed at the rate of sixty cents on the hundred dollars for city taxes; but all the property within the area was classified for 1909 by the Appeal Tax Court at the full city rate of taxation.

North avenue, Clifton street and Pennsylvania avenue are improved from kerb to kerb by stone pavement, and Fulton avenue by asphalt blocks, and all of said streets were so paved prior to 1902. Butcher's lane was improved throughout its length and width by Belgian blocks in *August 1908, prior to which date it had never been paved at all.* Pennsylvania avenue is a turnpike road owned by the Reisterstown Turnpike Company upon which tolls are charged within the limits of Baltimore City; but the only toll-gate on this turnpike, within the city limits, is located one-half mile northwest of Pennsylvania avenue and Clifton street.

The dirt lane, or passage ways, designated as Bruce alley on the above diagram, has never been legally opened, graded, kerbed, or paved; nor has it ever been graded, kerbed or paved, except that it was paved with cobble stones and has wooden kerbing from Clifton street to the ten-foot alley in the rear of houses Nos. 1611 to 1617 Clifton street, a distance of 106 feet, which pavement and kerbing was done at the expense of the adjoining property owners. Bruce alley is used principally as a driveway and approach from Butchers lane to the rear ends of the properties fronting on Pennsylvania avenue. It also appears that some blocks in the old city limits exceed two hundred thousand superficial square

feet, and that one block in the annex, containing 255,840 square feet, has been classified and taxed at the full city rate.

Is this property, or any of it, in the condition we have described it to be, liable to the full city tax rate for the year 1909 under the Act of 1908, Chapter 286? This is the principal question in the case. The Act makes it the duty of the Appeal Tax Court, as soon as possible after the Act takes effect, to divide all real and leasehold property in the annex into three separate classes, to be known as *urban, suburban and rural property,* for the purposes of city taxation for the year 1909, and to revise said classification annually thereafter for city taxation on or before October 1st, in each and every year for succeeding years in accordance with the following classification, said three classes to be defined and subject to city taxation as follows: (1) "All real and leasehold property in said territory *which is now legally liable* to full city taxation, and all real and leasehold property situated in said annexed territory, located in a block of ground not exceeding 200,000 superficial square feet formed and bounded on all sides by intersecting streets, avenues or alleys, opened, graded, kerbed and otherwise improved from kerb to kerb by pavement, macadam, gravel or other substantial material, shall be classified as urban property, and shall be subject to the same rate of city taxation as real and leasehold property within the old limits of said city may be subject.

(2) Every lot, or piece of real and leasehold property to a depth not exceeding 200 feet, situate in said territory, which fronts, binds or abuts on any public street, avenue or highway, lighted at public expense and completely paved from kerb line to kerb line, including gutters, with bitulithic, asphalt blocks, Belgian blocks, vitrified brick, macadam in good condition as heretofore laid before this section of this Article took effect, or if laid subsequent thereto, laid without direct assessment for the cost thereof, in whole or in part, upon the abutting property owners, unless the owners of a majority of front feet of property binding upon said street,

avenue or highway, or part thereof to be paved, expressly assent to said direct assessment, and laid in accordance with existing standards of proper macadam construction as laid under the supervision of the City Engineer or other improved pavements (or with cobble stones laid before this section of this Article took effect, or laid subsequent thereto upon the assent of the owners of the majority of front feet of property binding upon said street, avenue or highway, or part thereof to be paved), as distinguished from earth or gravel, which streets, avenues or highways are continuously connected by public or private streets, roads, avenues or highways (other than turnpikes upon which tolls are charged within the limits of said city), paved from kerb line to kerb line, including gutters, with bitulithic, asphalt blocks, Belgian blocks, vitrified bricks, macadam or other improved pavement or cobble stone, as distinguished from earth or gravel, with the territory embraced within the old city limits, shall be classified as suburban property, and shall be subject for the purposes of city taxation at a rate equal to two-thirds of the rate to which urban property may be liable, but in no year shall the rate for suburban property exceed that of one dollar and thirty cents ($1.30) on one hundred dollars ($100.00) of the assessed value of such suburban property.

(3) All real and leasehold property in said annexed territory which does not come under either the classification of urban or suburban property, as hereinbefore defined, shall be classified as rural property, and shall be subject, for the purposes of city taxation, to a rate equal to one-third of the rate to which urban property may be liable, but in no year shall said rate be less than the rate of sixty-five cents on the one hundred dollars ($100.00) of the assessed value of such rural property; provided that all taxes levied or assessed in said annexed territory prior to the levy and assessment to be made for the year 1909 shall be subject to the provision of the Act of the General Assembly of Maryland, Chapter 130, Acts of 1902, and all other laws in force relating to the levy and as-

sessments of taxes in said annex prior to the passage of this Act, etc.

It is very clear that the full city rate for the year 1909 could not be imposed upon the real and leasehold property in controversy, unless that property on the 13th of April, 1908, the date when the Act went into effect, was legally liable to full city taxation under the law as it existed before the Act was passed, or unless at the time of the imposition of the tax it was in the condition as to size and street improvement specified in the Act. Confessedly, this block was not and is not now in that condition, and it is not contended that the imposition of the full rate can be sustained under that provision of the Act; but it is contended that it can be upheld upon the ground that it was liable to the full city rate under the *pre-existing* law.

The city relies upon the cases of *Sindall* v. *Baltimore City,* 93 Md. 534; *Baltimore City* v. *Gail,* 106 Md. 684; and *Baltimore City* v. *Hiss,* 103 Md. 620. It was contended with much earnestness that the facts disclosed by the record bring the case within the principle announced in those cases.

The *Sindall Case* involved a construction of the *Act of 1888, Chapter 98,* the original annexation Act, and it is admitted that this property would be subject to the full rate under the principle of that case; but that Act was amended by the *Act of 1902, Chapter 130.* The effect of this amendment was to limit the scope of the decision in the *Sindall Case,* and to retain the sixty cent rate in the annex, until the landed property there situated became urban property within the meaning of the terms employed in that Act. *Joesting* v. *Baltimore,* 97 Md. 589.

It is said in *Gail's Case, supra,* that these two Acts "have been considered by this Court in a number of cases, but in none of them has the Court evinced the slightest purpose to weaken the force, or narrow the scope of their provisions. In all cases to which they are applicable both the city and the taxpayers of the annex will be held to a compliance with

their requirements. The *Act of 1888, Chapter 98,* as amend-
ed by the *Act of 1902, Chapter 130,* prescribes the condition
under which the full city rate may be imposed, and it can
only be imposed upon the conditions therein expressed. It
would be not only a hardship upon the taxpayer of the an-
nex to impose that rate upon other and different conditions,
but to do so would be an unwarranted exercise of the taxing
power of the City." In that case as to lot No. 1 we followed
the *Hiss Case, supra,* and held that the Foutz Act did not
apply to that lot. The reason why that Act did not apply to
a situation like that with which the Court was dealing in the
*Hiss Case* is more fully stated by JUDGE BOYD in *Baltimore
City* v. *Schafer,* 107 Md. 45: "The block then before the
Court *only contained 120,000 superficial square feet,* and the
streets and avenues were paved and otherwise improved like
other city property. * * * When the Foutz Act was passed
the block of ground before the Court in the *Hiss Case* was
already of the size therein prescribed, and was bounded by
intersecting avenues and streets which in every particular
complied with the requirements of that Act. As the avenues
and streets were then opened, etc., and otherwise improved,
and the block was of the size contemplated by that Act, it
could not have been intended that the Act of 1902 should ap-
ply to such a block because the law provided that the county
rate should not be increased *until* the avenues, etc., *shall
have been* opened, etc., nor *until* there shall be upon every
block of ground *so to be formed* at least six dwellings. Mani-
festly those provisions of the *Act of 1888* had reference to
property through which avenues, etc., were to be *afterward*
opened, and the provision as to six houses applied to a block
*so to be formed.* And when the *Act of 1902* explained what
was meant by the terms therein mentioned it could not have
intended to apply to property which had *already* been laid
out in the manner that Act contemplated."

The same conditions were found in the *Gail Case* as to lot
No. 1. Here, however, neither the block nor the streets were

in the condition which warranted the imposition of the full rate under the Foutz Act. The block was much in excess of the prescribed size, and one of its boundaries, Butchers lane, had never been paved prior to the *Act of 1908, Chapter 286.* We, therefore, agree with the learned Court below that the property in this block was not legally liable to full city taxation at the time the Act went into effect, and was not liable to that rate under any other provision of the Act.

The block not being subject to the full city rate, there was no authority in the Court to carve out certain portions of it and impose the full rate merely because the owners of certain parts of the block had paved, in the manner shown by the evidence, certain private alleys for the convenience of their lots. Such a construction would produce a condition which the Legislature could never have contemplated. It would, as stated in the brief of the appellees, practically penalize the owners of property in the block, who had paved their back alleys, by imposing a higher rate of taxation upon them than upon others who neglected to pave these alleys altogether, or who, in order to escape the higher rate, only paved them in spots.

The contention of the city that this can be done finds no support in *Rosenthal' Case,* 102 Md. 298, where the conditions were altogether different.

(2) As to the cross-appeals. It is contended that the property fronting on Pennsylvania avenue should not be classified as suburban property; first, because that avenue is a *private road;* and secondly, that it is a turnpike upon which tolls are charged within the city limits. In support of this position the appellees rely upon the provision of the *Act of 1908, Chapter, 286,* which we have quoted, which provides as a condition precedent to the classification of property as *suburban* that such property must front, bind, or abut on a *public* street, avenue, or highway which streets, avenues or highways are continuously connected by public or private streets, roads, avenues or highways, *other than turnpikes upon which*

*tolls are charged within the limits of said city.* These provisions must have a rational construction, so as to effect the purpose which the Legislature had in view. Pennsylvania avenue, as we have seen, is completely paved from kerb to kerb as provided by the Act. It is only a short distance from North avenue, which before annexation was the northern boundary of the city, and connects with Butchers lane and Clifton street, both of which are now improved city streets, leading into the older portions of the city, and the toll-gate spoken of is more than a half a mile northwest of the property of these appellants, so that they are not required to pay toll in going to and from any part of the old limits of the city. Under these circumstances, to hold that the Legislature intended by the language employed to forbid the classification of this property as suburban, would be to give the Act not only a very technical, but a very unreasonable construction.

We think that the obvious intention of the Legislature was to require the property owners paying taxes at the suburban or two-thirds rate should have a means of access to and from the old portions of the city over public and paved highways upon which their property abuts and over the connections designated in the Act, without the necessity of paying toll. In *Patapsco Electric Company* v. *The Mayor and City Council of Baltimore,* decided at the January Term 1909, 110 Md. 306, we held that turnpike roads established by a corporation under the authority of law are public highways, and the right to exact tolls from those using them comes from the State creating the corporation. In *Ulman* v. *Charles Street Avenue Company,* 83 Md. 144, this Court held that the owners of land abutting on that avenue, which was a turnpike road constructed by a corporation under authority of the Legislature, like the Frederick road, could not acquire title by adverse possession to any portion of the bed of the avenue, *because it was a public road or highway.*

It follows that we are of opinion that there was no error in the ruling of the Court upon the prayers, which will be set

out in the report of the case, and the judgment therefore will be affirmed. Upon the facts appearing in the record, the clerk will tax the costs as of two appeals only.

> *Judgment affirmed, the costs above and below to be paid by the Mayor and City Council of Baltimore.*